UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ABEL J. ALANIZ,

                             Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                   Defendant.

Case No. 3:13-cv-05614-RBL-KLS

REPORT AND RECOMMENDATION

Noted for July 18, 2014

       Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v.</u>

<u>Weber</u>, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny be reversed and

this matter be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

       On April 20, 2010, plaintiff filed an application for disability insurance benefits and

REPORT AND RECOMMENDATION - 1

another one for SSI benefits, alleging in both applications that he became disabled beginning March 13, 2009. See ECF #18, Administrative Record ("AR") 22.  Both applications were denied upon initial administrative review on August 6, 2010, and on reconsideration on December 7, 2010. Id.  A hearing was held before an administrative law judge ("ALJ") on September 29, 2011, at which plaintiff, represented by counsel, appeared and testified. See AR 38-72.  A supplemental hearing was held on Feburary 22, 2012, at which plaintiff appeared but did not testify, and at which a vocational expert appeared and testified. See AR 73-97.

In a decision dated February 29, 2012, the ALJ determined plaintiff to be not disabled. See AR 22-32.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 1, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On July 29, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on November 18, 2013. See ECF #18.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred in:

    (1)    evaluating the opinions of Brett Trowbridge, Ph.D., Janis L. Lewis, Ph.D., and Terilee Wingate, Ph.D., as well as the global assessment of functioning ("GAF") scores assessed by various medical sources in the record;

    (2)    discounting plaintiff's credibility;

    (3)    rejecting the lay witness evidence in the record;

    (4)    assessing plaintiff's residual functional capacity; and

REPORT AND RECOMMENDATION - 2

(5)   finding plaintiff to be capable of performing other jobs existing in
        significant numbers in the national economy.

For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the opinions of Dr. Trowbridge and Dr. Lewis – and thus in assessing plaintiff's residual functional capacity and in finding him to be capable of performing other jobs existing in significant numbers in the national economy – and therefore in determining him to be not disabled.  Also for the reasons set forth below, however, while the undersigned recommends that defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.       The ALJ's Evaluation of the Opinions of Dr. Trowbridge and Dr. Lewis

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."

1    Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

2          A.     Dr. Trowbridge

3          With respect to Dr. Trowbridge's opinion, the ALJ stated he gave "some weight" to it,

4    stating further in relevant part:

5              . . . Dr. Trowbridge indicated that the claimant had marked limitations in his
6              social abilities with a severe limitation in his ability to respond appropriately
               to and tolerate the pressures and expectaitons in a normal work setting
7              (Exhibit 1F/13).  However, on the MMSE the claimant scored a 28 out of a
               possible 30.  While there is objective evidence that the claimant has a mental
8              health condition and some resulting limitation, I find that the evaluations
               conducted by [state agency] doctors are largely based on the claimant's self-
9              reported symptoms and complaints, which lack credibility, rather than the
               objective test results.  I also note that the evaluation was conducted for the
10             purpose of determining the claimant's eligibility for state assistance; the
               claimant was aware that the continuation of his state assistance was
11             dependent upon the [state agency] evaluations, and likely had incentive to
               overstate his symptoms and complaints.  Dr. Trowbridge did not have access
12             to the entire record.  Also, Dr. Trowbridge does not have a treating
               relationship with the claimant.  His opinion only merits some weight.
13

14

15   AR 29.  The undersigned agrees with plaintiff that these are not legally sufficient reasons for

16   only giving some weight to the opinion of Dr. Trowbridge.

17          First, as plaintiff points out, the mere fact that Dr. Trowbridge evaluated plaintiff in order

18   to determine his eligibility for state assistance is not itself a valid basis for rejecting his opinion,

19   absent "evidence of actual improprieties" on Dr. Trowbridge's part. Lester, 81 F.3d at 832 ("An

20   examining doctor's findings are entitled to no less weight when the examination is procured by

21   the claimant than when it is obtained by the Commissioner.") (quoting Ratto v. Secretary, 839

22   F.Supp. 1415, 1426 (D.Or. 1993) ("The Secretary may not assume that doctors routinely lie in

23   order to help their patients collect disability benefits").  Nor is there any evidence that plaintiff

24   actually overstated his symptoms when evaluated by Dr. Trowbridge, even though the incentive

25

26

REPORT AND RECOMMENDATION - 6

1    might have been there to do so. See AR 307-12.  Indeed, psychological testing conducted by Dr.

2    Trowbridge at the time suggested no malingering on plaintiff's part. See AR 312.

3         Second, as plaintiff also points out, although Dr. Trowbridge may not have had access to

4    the entire record in this case, neither did the other medical opinion sources.  Further, the ALJ did

5    not explain why this was important, given that Dr. Trowbridge is an examining psychologist and

6    thus would be expected to rely primarily on his own examination of plaintiff.  It is not at all

7    clear, furthermore, what part of the record the ALJ believed would have made the opinion of Dr.

8    Trowbridge more accurate had he had access to it.  The fact that Dr. Trowbridge did not have a

9    treating relationship with plaintiff also is not a valid basis to reject his opinion, as the opinion of

10   an examining physician may itself constitute substantial evidence.

11        Lastly, while it is clear that Dr. Trowbridge relied to some extent on plaintiff's own self-

12   reporting, it is not at all clear that he did so to a greater extent than the psychological testing he

13   conducted or than his own personal obervations. See AR 307-12; Ryan v. Commissioner of

14   Social Security, 528 F.3d 1194 (9th Cir. 2008) ("ALJ does not provide clear and convincing

15   reasons for rejecting an examining physician's opinion by questioning the credibility of the

16   [claimant's] complaints where the [examining physician] does not discredit those complaints and

17   supports his [or her] ultimate opinion with his [or her] own observations," and there is "nothing

18   to suggest" the examining physician in that case relied on the claimant's own "description of her

19   symptoms . . . more heavily than his own clinical observations"); Sprague v. Bowen, 812 F.2d

20   1226, 1232 (9th Cir. 1987) (opinion that is based on clinical observations supporting diagnosis of

21   depression is competent [psychiatric] evidence).  Indeed, at least one of the marked functional

22   limitations – defined as a "[v]ery significant interference" with basic work-related activities –

23   appears to have been directly based on such an observation. AR 310 (appearing to base marked

REPORT AND RECOMMENDATION - 7

limitation in abiity to care for self on plaintiff's "very flat affect").

B.    Dr. Lewis

In regard to the opinion of Dr. Lewis, the ALJ also gave it only "some weight," further finding in relevant part:

> . . . Dr. Lewis opined that the claimant's depression would cause marked fatigue and errors, marked disinterest in his job; moderate limitations in his ability to sustain coworker relationships and his disorganization would cause errors and inefficiency during work activities (Exhibit 1F/3; 11F).  This opinion is somewhat consistent with the claimant's subjective reports; however, it is not supported by [the] claimant's performance on the mental status examination.  Dr. Lewis did not have the opportunity to review the entire record which indicates the claimant lacks credibility and motivation, rather than being limited by his impairments.  The reliable degree of limitation from her examination is accommodated in the above residual functional capacity finding.

AR 29.  Plaintiff argues, and again the undersigned agrees, that the ALJ faild to provide legally sufficient reasons for rejecting the opinion of Dr. Lewis.

First, as discussed above with respect to Dr. Trowbridge's opinion, the mere fact that Dr. Lewis did not have the opportunity to review the entire record is not itself a legitimate basis for rejecting it, given that this is true for all the medical opinion sources in the record and that she is an examining physician, and therefore entitled to rely on her own evaluation findings to opine as to plaintiff's functional capabilities.  Second, while plaintiff's performance on the mental status examination Dr. Lewis conducted may not have been particularly remarkable (see AR 305-06), she did provide a fair number of her own personal observations, many if not most of which could be said to provide support for the functional limitations she assessed.  See AR 302.

Even though it is not entirely clear, the one marked limitation she assessed is based on the objective clinical findings she obtained.  For example, Dr. Lewis indicated it was based in part on plaintiff's thought blocking, and the mental status examination showed possible thought

REPORT AND RECOMMENDATION - 8

blocking. See AR 302, 305; Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnosis of psychiatric disorder, just as results of physical examination provide basis for physical illness or injury diagnosis).  Here too, therefore, the ALJ's rejection of the opinion of Dr. Lewis cannot be upheld.

II.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

        Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

        Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

REPORT AND RECOMMENDATION - 9

The ALJ in this case assessed plaintiff with the residual functional capacity:

**. . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can do work that involves no more than superficial interaction with the public and coworkers.  The claimant can do work that does not require exercising more than rudimentary judgment and consists of no more than simple and repetitive tasks.**

AR 26 (emphasis in original).  Plaintiff argues, and the undersigned agrees, that in light of the ALJ's failure to provide legally sufficient reasons for rejecting the opinions of Dr. Trowbridge and Dr. Lewis, it cannot be said that the above RFC assessment completely and accurately describes all of his functional limitations, and therefore that it is supported by the substantial evidence in the record.

III.    The ALJ's Findings at Step Five

        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

        An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

REPORT AND RECOMMENDATION - 10

1   (citations omitted).  The ALJ, however, may omit from that description those limitations he or

2   she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

3           At the supplemental hearing, the ALJ posed a hypothetical question to the vocational

4   expert containing substantially the same limitations as were included in the ALJ's assessment of

5   plaintiff's RFC. See AR 82.  In response to that question, the vocational expert testified that an

6   individual with those limitations – and with the same age, education and work experience as

7   plaintiff – would be able to perform other jobs. See AR 82, 84.  Based on the testimony of the

8   vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

9   significant numbers in the national economy. See AR 31-32.  But the undersigned again agrees

10  that because the ALJ erred in regard to the opinions of Drs. Trowbridge and Lewis and the RFC

11  assessment, his reliance on the vocational expert's testimony to find plaintiff not disabled at step

12  five cannot be said to be supported by substantial evidence.

13  IV.    This Matter Should Be Remanded for Further Administrative Proceedings

14          The Court may remand this case "either for additional evidence and findings or to award

15  benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

16  proper course, except in rare circumstances, is to remand to the agency for additional

17  investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

18  omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

19  unable to perform gainful employment in the national economy," that "remand for an immediate

20  award of benefits is appropriate." Id.

21          Benefits may be awarded where "the record has been fully developed" and "further

22  administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

23  v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

24

25

26

REPORT AND RECOMMENDATION - 11

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record, plaintiff's residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted. Plaintiff argues he should be found disabled based on the severe limitation Dr. Trowbridge found he had in his ability to tolerate the pressures and expectations of a normal work setting. It is not at all clear at this point, however, that the substantial evidence in the record supports that limitation, and therefore the undersigned declines to so find.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk //

REPORT AND RECOMMENDATION - 12

1   is directed set this matter for consideration on **July 18, 2014**, as noted in the caption.

2       DATED this 1st day of July, 2014.

3

4

5       Karen L. Strombom

6       United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 13